**Joanne DeGRAZIANO, Plaintiff,**

**v.**

**VERIZON COMMUNICATIONS, INC., Cellco Partnership d/b/a Verizon, Wireless, Vodafone Group, PLC, Discover Bank Discover Financial Services, Inc. Morgan Stanley Dean Witter and Company, Defendants.**

**No. 03–CV–4918 (ADS)(MLO).**

United States District Court, E.D. New York.

July 22, 2004.

Benjamin J. Fischer, P.C. by Benjamin J. Fischer, Esq., Bayside, NY, for Plaintiff.

Greenberg Traurig, LLP by Philip R. Sellinger, Esq. and Ian S. Marx, Esq., Of Counsel, New York City, for Defendants Cellco Partnership d/b/a Verizon Wireless and Verizon Communications Inc.

Andrew P. Saulitis, P.C. by Andrew P. Saulitis, Esq., New York City, for Defendants Discover Bank, Discover Financial Services, Inc., and Morgan Stanley Dean Witter and Company.

No Appearance, for Vodafone Group, PLC.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Joanne Degraziano ("Degraziano" or the "plaintiff") commenced this action against Verizon Communications, Inc. ("Verizon Communications"), Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless"), Vodafone Group, PLC ("Vodafone"), Bank of America, N.A. (U.S.A.), Bank of America Corporation, Discover Bank, Discover Financial Services, Inc. and Morgan Stanley Dean Witter and Company (the "defendants") alleging various violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. 1681, *et seq.* On March 30, 2004 a stipulation was filed with the Court dismissing the claims against the defendants Bank of America, N.A. (USA) and Bank of America Corporation with prejudice.

Presently before the Court is a motion by the defendants Verizon Communications and Verizon Wireless (the "moving defendants") to (1) dismiss the first and second causes of actions and compel arbitration of those claims; and (2) dismiss the third and fourth causes of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") for failure to state a claim.

## I. BACKGROUND

### A. As to the Motion to Compel Arbitration of the First and Second Causes of Action

The following facts are taken from the complaint and from the Declaration of Jeffrey Nason, the Supervisor, Customer Satisfaction for the Northeast Area of Verizon Wireless, sworn to on December 8, 2003, and are undisputed unless otherwise noted.

On or about May 4, 1998, the plaintiff began receiving wireless telephone services from Verizon Wireless. As a precondition of receiving such services, the plaintiff agreed to a Cellular Services Agreement (the "CSA"). Among its terms and conditions, the CSA includes an arbitration clause which states:

> *Independent Arbitration.* **INSTEAD OF SUING IN COURT, YOU'RE AGREEING TO ARBITRATE DISPUTES ARISING OUT OF OR RELATED TO THIS OR PRIOR AGREEMENTS. THIS AGREEMENT INVOLVES COMMERCE AND THE FEDERAL ARBITRATION ACT APPLIES TO IT. ARBITRATION ISN'T THE SAME AS COURT. THE RULES ARE DIFFERENT AND THERE'S NO JUDGE AND JURY. YOU AND WE ARE WAIVING RIGHTS TO PARTICIPATE IN CLASS ACTIONS, INCLUDING PUTATIVE CLASS ACTIONS BEGUN BY OTHERS PRIOR TO THIS AGREEMENT, SO READ THIS CAREFULLY. THIS AGREEMENT AFFECTS RIGHTS YOU MIGHT OTHERWISE HAVE IN SUCH ACTIONS THAT ARE CURRENTLY PENDING AGAINST U.S. OR OUR PREDECESSORS IN WHICH YOU MIGHT BE A POTENTIAL CLASS MEMBER.** *(We each retain our rights to complain to any regulatory agency or commission.)* **YOU AND WE EACH AGREE THAT, TO THE FULLEST EXTENT PROVIDED BY LAW:**
>
> **(1) ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR TO ANY PRIOR AGREEMENT FOR CELLULAR SERVICE WITH U.S. OR, ANY OF OUR AFFILIATES OR PREDECESSORS IN INTEREST, OR TO ANY PRODUCT OR SERVICE PROVIDED UNDER OR IN CONNECTION WITH THIS AGREEMENT OR SUCH A PRIOR AGREEMENT, WILL BE SETTLED BY INDEPENDENT ARBITRATION INVOLVING A NEUTRAL ARBITRATOR AND ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") UNDER WIRELESS INDUSTRY ARBITRATION ("WIA") RULES, AS MODIFIED BY THIS AGREEMENT. WIA RULES AND FEE INFORMATION ARE AVAILABLE FROM U.S. OR THE AAA;**
>
> **(2) EVEN IF APPLICABLE LAW PERMITS CLASS ACTIONS OR CLASS ARBITRATIONS, YOU WAIVE ANY RIGHT TO PURSUE ON A CLASS BASIS ANY SUCH CONTROVERSY OR CLAIM AGAINST US, OR ANY OF OUR AFFILIATES OR PREDECESSORS IN INTEREST, AND WE WAIVE ANY RIGHT TO PURSUE ON A CLASS BASIS ANY SUCH CONTROVERSY OR CLAIM AGAINST YOU . . . .**

Nason Decl. Exh. 2 (emphasis added).

At some point in time the plaintiff was unable to pay her monthly bills for monies owed to, among other entities, Verizon Wireless. During 2001, the plaintiff entered into a debt reduction program with the Daly Law Center to arrange settlements on her debts. In February 2002, Verizon Wireless provided a report to As-

set Management Outsourcing Recoveries, Inc. ("AMO Recoveries") in which Verizon Wireless reported that the plaintiff's account was in collection with an outstanding balance of $681.97.

The Daly Law Center, on behalf of the plaintiff, and AMO Recoveries, on behalf of Verizon Wireless, settled the outstanding balance for $340.49. Along with a letter dated February 20, 2002, the Daly Law Center submitted a check in the amount of $340.49 to AMO with a request that AMO report to the credit/consumer reporting agencies that the outstanding balance was resolved. The plaintiff alleges that Verizon Wireless failed to inform the credit/consumer reporting agencies that the outstanding balance was satisfied.

Thereafter, the plaintiff was unable to secure financing for the purchase of a motor vehicle allegedly due to her credit history. The plaintiff asserts two causes of action against Verizon Wireless: (1) that by failing to make any updates and/or reports to the credit/consumer reporting agencies since February 2002 or by implementing proper policies, procedures or controls, Verizon Wireless has knowingly and in bad faith breached the duties imposed on it by the FCRA; and (2) that by failing to make any updates and/or reports to the credit/consumer reporting agencies since February 2002 or by implementing proper policies, procedures or controls, Verizon Wireless has negligently breached the duties imposed on it by the FCRA. For these alleged violations of law the plaintiff seeks compensatory damages for "humiliation," actual financial damages, and punitive damages.

## B. As to the Motion to Dismiss

As indicated above, Verizon Communications moves to dismiss the third and fourth causes of action pursuant to Rule 12(b)(6) for failure to state a claim. For purposes of this motion, the relevant facts are taken from the complaint and accepted as true.

The plaintiff alleges that Verizon Communications and Vodafone are the two parent companies of Verizon Wireless, holding a 56% and 44% ownership interest, respectively.

The third cause of action alleges that because these parent companies enjoy complete ownership of Verizon Wireless they "play the part of the 'master' with the role of the 'servant/agent' being played by Verizon Wireless." Compl. ¶ 120. As such, the plaintiff alleges that liability for the intentional and negligent failure of Verizon Wireless to comply with the FCRA extends to Verizon Communications and to Vodafone. The complaint further alleges that it was the responsibility of Verizon Communications and Vodafone to establish quality and managerial controls and policies to ensure that Verizon Wireless did not violate and laws in the performance of its duties on behalf of its "masters." Compl. ¶ 130.

The fourth cause of action seeks to pierce the corporate veil of Verizon Wireless and impose liability on Verizon Communications and Vodafone. In particular, the plaintiff claims that Verizon Communications and Vodafone are responsible for any and all illegal actions taken by Verizon Wireless because of (1) their complete "dominion and control" over Verizon Wireless, (2) "the closeness of the relationship" between Verizon Wireless and its parent companies, (3) the fact that all assets and liabilities of the company are reflected on the balance sheets of its parent companies, and (4) as parent companies, Verizon Communications and Vodafone failed to fulfill their duty of establishing managerial or quality policies, procedures, or controls to ensure that Verizon Wireless did not violate any laws in the performance of its duties.

## II. DISCUSSION

### A. As to the Motion to Compel Arbitration

■ Under the Federal Arbitration Act (the "FAA"), written provisions to arbitrate controversies included in any contract affecting interstate commerce "shall be valid, irrevocable and enforceable, save upon such grounds as exist under law or equity for the revocation of any contract." 9 U.S.C. § 2. There is a well-settled federal policy encouraging arbitration of disputes where a contract so provides. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *see also ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir.2002). Because of this strong federal preference for arbitration as a dispute resolution procedure, any doubts concerning whether there has been a waiver of the right to arbitrate must be resolved in favor of arbitration. *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir.1997).

■ Before a district court may compel arbitration, it "must first determine two threshold issues that are governed by state rather than federal law: (1) Did the parties enter into a contractually valid arbitration agreement? and (2) If so, does the parties' dispute fall within the scope of the arbitration agreement?" *Cap Gemini Ernst & Young, U.S., LLC v. Nackel*, 346 F.3d 360, 365 (2d Cir.2003) (citation omitted).

■ Here, it is undisputed that the parties entered into the CSA containing the following arbitration provision:

*Independent Arbitration.* **INSTEAD OF SUING IN COURT, YOU'RE AGREEING TO ARBITRATE DISPUTES ARISING OUT OF OR RE-** *LATED TO THIS OR PRIOR AGREE-MENTS . . . .*

(emphasis in original)

Thus, the contractual agreement to arbitrate is valid. *See Cap Gemini Ernst & Young U.S. LLC v. Arentowicz*, No. 04 Civ. 0299, 2004 WL 1386145, at *4 (S.D.N.Y. June 22, 2004) ("An individual who signs a contract is presumed to know its contents and assent to them, unless he can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract." (internal quotations and citations omitted)).

Furthermore, the claims alleged in the first and second causes of action fall within the scope of this arbitration provision. The clause in this case which states that Verizon Wireless and the plaintiff agree to "arbitrate disputes arising out of or related to this or prior agreements . . ." is the "paradigm of a broad clause." *Collins & Aikman Products Co. v. Building Systems, Inc., et al.*, 58 F.3d 16, 20 (2d Cir. 1995) (stating that a "broad clause" is one which purports to refer all disputes arising out of the contract to arbitration). In the Court's view, the plaintiff's claims that Verizon Wireless violated the FCRA arise out of and are related to the CSA. As such, the plaintiff's claims are "presumptively arbitrable." *Id.* (finding that contractual language which required arbitration for "[a]ny claim or controversy arising out of or relating to th[e] agreement" made the claims presumptively arbitrable); *see also Cap Gemini Ernst & Young U.S. LLC*, 204 WL 1386145, at *6. As the party opposing arbitration, the plaintiff has the burden of proving that the claims are not subject to arbitration. *Green Tree Financial Corp.—Alabama v. Randolph*, 531 U.S. 79, 91–92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

The plaintiff advances numerous arguments in support of her contention that the

first and second causes of action are not arbitrable. Although none of these contentions have merit, to complete the record, the Court will address these arguments.

■ First, the plaintiff contends that Verizon Wireless "waived its rights to arbitrate and the right cannot be revived." Plfs. Mem. in Opp. at 2. A party may waive its right to arbitration by expressly indicating that it wishes to resolve its claims before a court, *Gilmore v. Shearson/Amer. Express Inc.*, 811 F.2d 108, 112 (2d Cir. 1987), or by impliedly waiving its right to enforce a contractual arbitration clause by "engag[ing] in protracted litigation that results in prejudice to the opposing party." *S & R Co. Of Kingston v. Latona Trucking*, 159 F.3d 80, 83 (2d Cir.1998) (citations omitted); *see also Standard Microsystems Corp. v. Dahod*, 84 F.Supp.2d 396, 398 (E.D.N.Y.2000) (stating that prejudice "refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue"). Based on the record submitted to the Court there is no indication that Verizon Wireless expressly waived its right to arbitrate.

■ The plaintiff contends that Verizon Wireless waived the right to arbitrate by placing the plaintiff's account for collection with AMO Recoveries. However, the plaintiff provides no legal support for this proposition. In any event, the Court finds that Verizon Wireless did not waive its right to arbitration by engaging in "protracted litigation." This determination is fact specific. Factors to consider include: (1) the time elapsed from the commencement of litigation to the request for arbitration; (2) the amount of any litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advan-

tage of pre-trial discovery not available in arbitration, and expense. *PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107–09 (2d Cir.1997).

■ Applying this analytical framework, the Court finds that (1) the lapse in time between the commencement of litigation and the demand for arbitration was brief as less than two months passed between the service of the complaint and Verizon Wireless's demand for arbitration, *see PPG Indus.*, 128 F.3d at 108 (five-month delay in litigation is not enough, by itself, to infer waiver); (2) because Verizon Wireless's motion to compel arbitration was served in lieu of an answer, the parties did not engage in meaningful litigation, *but see id.* (engaging in discovery and filing substantive motions constitutes waiver); and (3) the plaintiff has not indicated that she has been prejudiced in any way.

Next, the plaintiff argues that the letter from AMO, in which it was agreed that a discounted sum would be accepted in satisfaction of the money owing, coupled with a letter from the Daly Law Center enclosing a check for the settlement amount constituted an "accord and satisfaction and thus a new contract between the parties" which negated the arbitration provision. Plf. Mem. in Opp. at 3. The Court disagrees.

■ "[A] party seeking to establish an accord and satisfaction must demonstrate that there was a disputed or unliquidated claim between the parties which they mutually resolved through a new contract discharging all or part of their obligations under the original contract." *Reliance Ins. Co. v. Amer. Lintex Corp.*, No. 00 Civ. 5568, 2001 WL 604080, at *3 (S.D.N.Y. June 1, 2001) (quoting *Pothos v. Arverne Houses, Inc.*, 269 A.D.2d 377, 702 N.Y.S.2d 392, 393 (2d Dep't 2000)). There is no evidence that remotely indicates that a new contract was created by the acceptance of a reduced payment or that the

plaintiff and Verizon Wireless discharged their obligations under the CSA.

■ In any event, the issue of whether there was an accord and satisfaction negating an arbitration provision is one to be determined by the arbitrators and not the Court. *Ropner Shipping Co.*, 118 F.Supp. 919, 920 (S.D.N.Y.1954); *In re Fener Realty Co. and Nico Constr. Co.*, 582 N.Y.S.2d 163, 164, 182 A.D.2d 436, 438 (1st Dep't 1992) ("Once the parties to a broad arbitration clause have made a valid choice of forum, as here, all questions with respect to the validity and effect of subsequent documents purporting to work a modification or termination of the substantive provisions of their original agreement are to be resolved by the arbitrator." (internal quotations and citations omitted)). Thus, even if meritorious, this issue is not for the Court to decide.

■ In addition, the plaintiff contends that compelling arbitration of alleged violations of the FCRA is improper because doing so would force the plaintiff to "waive[ ] her rights under the FCRA and all protections afforded to her by law." Plfs. Mem. in Opp. at 9. This contention is also misplaced. It is well-settled that statutory rights may be arbitrated "so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum." *Green Tree Fin. Corp–Alabama v. Randolph*, 531 U.S. at 90, 121 S.Ct. 513 (internal quotations omitted). The plaintiff has not explained why her claims cannot be advanced through arbitration.

Finally, the Court notes that the remaining arguments, namely that "the defendant concedes the inapplicability of the arbitration clause" and that the "defendants' motion qualifies as a motion for summary judgment and fails to meet the standards for such a decision" are patently without merit.

Accordingly, the motion by Verizon Wireless to compel arbitration of the first and second causes of action is granted.

## B. As to the Motion to Dismiss

### 1. Applicable Law

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court should dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). The court must accept as true all of the factual allegations set out in the complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally. *See Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000) (citing *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999)). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995).

### 2. As to Parent Liability of Verizon Communications and Vodafone

■ Under New York law, "a parent company is not automatically liable for the acts of its wholly-owned subsidiary." *Manchester Equipment Co., Inc. v. Amer. Way and Moving Co., Inc.*, 60 F.Supp.2d 3, 6 (E.D.N.Y.1999). The plaintiff asserts two theories as to how Verizon Communications and Vodafone are liable as parent companies.

■ The first theory, apparently arising out of agency law, is that the parent companies "play the part of the 'master' with the role of the 'servant/agent' being

played by Verizon Wireless." Compl. ¶ 120. However, the plaintiff provides no factual support for this proposition other than his contention that Verizon Wireless is completely owned by Verizon Communications and Vodafone. However, "liability is never imposed solely upon the fact that a parent owns a controlling interest in the shares of a subsidiary." *Manchester Equipment Co., Inc.*, 60 F.Supp.2d at 6 (citation omitted).

■ The second theory of liability is that because of their "total, complete ownership [of Verizon Wireless]," Compl. ¶ 146, Verizon Communications and Vodafone are liable for any wrongful acts of its subsidiary. In order to pierce the corporate veil and impose liability on a parent company, the plaintiff must make a two-part showing: "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Amer. Fuel Corp. v. Utah Energy Devel. Co., Inc.*, 122 F.3d 130, 134 (2d Cir.1997) *accord Thrift Drug, Inc. v. Univ. Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir.1997). To determine whether the parent company has exercised "complete domination" over its subsidiary, the Court considers:

(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity [or individual], and (10) intermingling of property between the entities.

*Rays Trading (H.K.) Co., Ltd. v. Judy–Philippine, Inc.*, No. 98 Civ. 0170, 1998 WL 355422, at *4 (S.D.N.Y.1998) (citing *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1053 (2d Cir.1997)).

■ Here, the plaintiff fails to plead sufficient facts demonstrating that Verizon Wireless' corporate identity should be disregarded. Rather, the plaintiff's allegations, taken as true for the purposes of this motion, are couched in conclusory statements. In particular, the plaintiff alleges that Verizon Communications and Vodafone are liable because of (1) their complete "dominion and control" over Verizon Wireless, (2) "the closeness of the relationship" between Verizon Wireless and its parent companies, (3) the fact that all assets and liabilities of the company are reflected on the balance sheets of its parent companies, and (4) as parent companies, Verizon Communications and Vodafone failed to fulfill their duty of establishing managerial or quality policies, procedures, or controls to ensure that Verizon Wireless did not violate any laws in the performance of its duties. None of the allegations sufficiently set forth facts to justify piercing the corporate veil in this case. To the extent that the plaintiff also argues that Verizon Communications is liable as a partner and joint venturist of Verizon Wireless, this contention was not set forth in the complaint.

Accordingly, the motion to dismiss the third and fourth causes of action as against Verizon Communications is granted. Because it has not appeared in this action, the causes of action as to Vodafone remain.

## C. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure states that a party shall be given leave to replead when justice so

requires. *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) (it is the usual practice upon granting a motion to dismiss to allow leave to replead). As such, the Court will grant the plaintiff leave to amend its complaint only with respect to those claims against Verizon Communications. However, the plaintiffs are warned about perfunctory or cosmetic changes.

> [I]t has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of a lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed. R.Civ.P. 11.

*Harrison v. NBD, Inc.,* 990 F.Supp. 179, 185 (E.D.N.Y.1998) (citations omitted). In regard to this amendment, the Court notes that the plaintiff faces an uphill battle in her effort to pierce the corporate veil and impose liability upon Verizon Communications especially in light of the moving defendant's contentions that "Verizon Wireless is the nation's leading provider of wireless communications. It has the largest nationwide wireless voice and data network and 36 million customers, more than 40,000 employees and it generated annual revenue in 2002 of more than $19 billion," Nason Decl. ¶ 2, and that "Verizon Wireless ... has a distinct and separate existence from Verizon Communications." Erb Decl. ¶ 3.

Nevertheless, the Court will grant the plaintiff leave to replead solely those causes of action relating to Verizon Communications within thirty days from the date of this order.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the motion by Verizon Wireless to compel arbitration of the first and second causes of action is **GRANTED;** and it is further

**ORDERED,** that the first and second causes of action are dismissed without prejudice and subject to the arbitration; and it is further

**ORDERED,** that the plaintiff and Verizon Wireless are directed to proceed to arbitration on the terms specified in the CSA; and it is further

**ORDERED,** that the motion to dismiss the third and fourth causes of action as to Verizon Communications complaint is **GRANTED;** and it is further

**ORDERED,** that the third and fourth causes of action against Verizon Communications are dismissed without prejudice with leave to replead; and it is further

**ORDERED,** that the plaintiff must serve and file her amended complaint within thirty days from the date of this order.

**SO ORDERED.**